UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BATTLE CREEK HEALTH SYSTEMS,
and TRINITY HEALTH-MICHIGAN,

        Plaintiffs,

v.                                      Case No. 5:05-cv-14

                                          Hon. Wendell A. Miles

TOMMY G. THOMPSON,

        Defendant.
_____/

OPINION AND ORDER

      Plaintiffs, Battle Creek Health System and Trinity Health-Michigan, filed this action against Tommy G. Thompson, Secretary of the Department of Health and Human Services ("Secretary"), under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 (the "Medicare Act"), and the Administrative Procedure Act, 5 U.S.C. § 551 (the "APA").  This matter is presently before the court on Plaintiffs' Motion for Summary Judgment (dkt. #23), and Defendant's Counter-Motion for Summary Judgment (dkt. #27).  For the reasons that follow, the Court denies the Plaintiffs' motion and grants the Defendant's counter-motion.

Background

      The Medicare Act establishes a system for payment of health services provided to the elderly and disabled. 42 U.S.C. § 1395 et seq.  The Department of Health and Human Services Center for Medicare and Medicaid Services ("CMS"), administers the program for the Secretary. Plaintiff Battle Creek Health Systems ("Battle Creek") operates an acute-care hospital that is a participating Medicare provider.  Plaintiff Trinity Health-Michigan, doing business as Mercy

General Health Partners ("Mercy-Muskegon"), operates an acute-care hospital that is also a participating Medicare provider. Provider hospitals participate in Medicare by entering into an agreement with the Secretary. Both Plaintiffs are parties to a Medicare participation agreement with the Secretary.

Pursuant to 42 U.S.C. § 1395h, fiscal intermediaries under contract to the Secretary serve as claims managers for the Medicare program, making the initial determination of the amount of payment to be made to a health care provider. At the close of the fiscal year (the cost reporting period), a provider submits a cost report to its fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of the costs to be allocated to Medicare. 42 CFR § 413.20. The fiscal intermediary audits the report and determines the final amount of Medicare reimbursement due to the provider, 42 U.S.C. § 1395g, and then issues a Notice of Program Reimbursement ("NPR"). 42 CFR § 405.1803.

Among other costs, Medicare reimburses providers for bad debts that are attributable to amounts unpaid by beneficiaries of the Medicare program for Medicare deductibles and coinsurance. In this case, the fiscal intermediary[1] audited Plaintiffs' cost reports for the period ending June 30, 1999, and denied $155,822 and $327,829 in bad debts ("Bad Debts") claimed respectively by Battle Creek and Mercy-Muskegon. Both Plaintiffs appealed to the Provider Reimbursement Review Board (PRRB), which found that Plaintiffs were entitled to reimbursement for the Bad Debts disallowed by the fiscal intermediary. Subsequently, the Deputy Administrator of CMS reversed the PRRB's decision regarding the Bad Debts. The Deputy Administrator's decision, issued November 12, 2004, was the final decision of the

---

[1] The Plaintiffs' fiscal intermediary is United Government Services, Inc.

Secretary. Plaintiffs now are challenging the final decision of the Secretary denying Medicare reimbursement for the Bad Debts claimed by each Plaintiff.[2]

## Standard of Review

Judicial review of the Secretary's final decision in a Medicare reimbursement dispute is conducted in accordance with the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 701 et seq. 42 U.S.C. § 1395oo(f)(1). Under this standard, the Court may set aside a final decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); Maximum Home Health Care, Inc. v. Shalala, 272 F.3d 318, 320 (6th Cir. 2001). The Supreme Court defined the "arbitrary and capricious" standard under section 706 by stating:

> The scope of review is a narrow one. A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency . . . The agency must articulate a rational connection between the facts found and the choice made . . . While we may not supply a reasoned basis for the agency's action that the agency itself has not given . . . we will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned.

Bowen Transportation v. Arkansas-Best, Freight Systems, 419 U.S. 281, 285-86 (1974) (citations

---

[2] The Tax Equity and Fiscal Responsibility Act ("TEFRA") established a ceiling on the allowable rate-of-increase for hospital inpatient operating costs. The TEFRA Target Amount for a provider is updated for each hospital cost reporting period by an annual rate-of-increase percentage. The fiscal intermediary adjusted Battle Creek's TEFRA target rate and the PRRM affirmed the adjustment. The Deputy Administrator summarily affirmed the PRRM's decision. Plaintiffs' complaint also includes a claim challenging the adjustment to Battle Creek's TEFRA rate. The parties, however, have resolved the TEFRA rate issue, have stipulated to dismissing this claim, and an order dismissing the TEFRA claim was entered on March 6, 2006 (dkt. #32).

omitted).  The Supreme Court further clarified the term "arbitrary and capricious," explaining:

> Normally, an agency rule would be arbitrary and capricious if the agency relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfr. Ass'n v. State Farm, 463 U.S. 29, 43 (1983).  Agency interpretations contained in policy statements, agency manuals and enforcement guidelines, which do not have the force of law, are entitled to less deference than an interpretation arrived at after a formal adjudication or notice-and-comment rulemaking.  Christensen v. Harris County, 529 U.S. 576, 587 (2000); Reno v. Koray, 515 U.S. 50, 61 (1995).  However, the Court must defer to the Health and Human Services' reading of its own regulations, unless the reading is "plainly erroneous or inconsistent with the regulation[s]."  Auer v. Robbins, 519 U.S. 452, 461 (1997); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); and see K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 292 (1988)  ("If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute."); Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").  If the Secretary defines a regulation in a reasonable way, the Court must give that reading controlling weight, even if it is not the answer "'the court would have reached if the question had initially arisen in a judicial proceeding.'"  Regions Hosp. v. Shalala, 522 U.S. 448, 457 (1998) (quoting Chevron USA , 467 U.S. at 843 n.11 (1984)).

Discussion

Under the Medicare Act, the Secretary reimburses provider hospitals for services provided to Medicare patients. Bad Debts are considered reductions in revenue rather than costs incurred delivering medical services and are not allowable costs under Medicare. However, Service providers receive reimbursement for "bad debts," as defined at 42 C.F.R. § 412.115(a):

> [A]mounts considered to be uncollectible from accounts and notes receivable that were created or acquired in providing services. "Accounts receivable" and "notes receivable" are designations for claims arising from the furnishing of services and are collectible in money in the relatively near future.

A debt must meet the following criteria before a provider is entitled to reimbursement:

> (1) The debt must be related to covered services and derived from deductible and coinsurance amounts.
>
> (2) The provider must be able to establish that reasonable collection efforts were made.
> (3) The debt was actually uncollectible when claimed as worthless.
>
> (4) Sound business judgment established that there was no likelihood of recovery at any time in the future.

42 C.F.R. § 413.89(e); Provider Reimbursement Manual (PRM), § 308.[3] Here, with regard to the Bad Debts disallowed, the fiscal intermediary determined that Plaintiffs had met the requirements of subsections 1 and 2, but failed to satisfy subsections 3 and 4.

CSM publishes the PRM, which contains interpretive guidelines and policies to

---

[3]Medicare reimburses the health care provider for debts which meet these criteria to prevent a cost shift from the Medicare recipient to individuals not covered by Medicare. See 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 413.80(d).

implement the Medicare regulations.  Relative to this case, the PRM provides:

> If after reasonable and customary attempts to collect a bill, the debt
> remains unpaid more than 120 days from the date the first bill is
> mailed to the beneficiary, the debt may be deemed uncollectible.

PRM, § 310.2.

> To be considered a reasonable collection effort, a provider's effort to
> collect Medicare deductible and coinsurance amounts must be similar
> to the effort the provider puts forth to collect comparable amounts from
> non-Medicare patients.

PRM, § 310.  "A provider's collection effort may include the use of a collection agency in

addition to or in lieu of subsequent billings, follow-up letters, telephone and personal contacts. "

PRM, § 310.A.  Further,

> Uncollectible deductibles and coinsurance amounts are recognized
> as allowable bad debts in the reporting period in which the debts are
> determined to be worthless.  Allowable bad debts must be related
> to specific amounts which have been determined to be uncollectible.
> Since bad debts are uncollectible accounts receivable and notes
> receivable and notes receivable, the provider should have the usual
> accounts receivable records-ledger cards and source documents to
> support its claim for a bad debt for each account included.  Examples
> of the type of information to be retained may include, but are not
> limited to, the beneficiary's name and health insurance number;
> admission/discharge dates for Part A bills and dates of services for
> Part B bills; date of write-off; and a breakdown of the uncollectible
> amount by deductible and coinsurance amounts.  This proposed list
> is illustrative and obligatory.

PRM, § 314

> Amounts included in allowable bad debts in a prior period might
> be recovered in a later reporting period.  Treatment of such
> recoveries under the program is designed to achieve the same
> effect upon reimbursement as in the case where the amount was
> uncollectible.
> Where the provider was reimbursed by the program for bad debts
> for the reporting period in which the amount recovered was included
> in allowable bad debts, reimbursable costs in the period of recovery

>are reduced by the amounts recovered. However, such reductions in reimbursable costs should not exceed the bad debts reimbursed for the applicable prior period.

PRM, § 316.

In addition, 42 C.F.R. § 413.20(a) provides in part that "[t]he principles of cost reimbursement require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program."

The fiscal intermediaries are provided the Intermediary Manual, which instructs in part:

>If the bad debt is written-off on the provider's books 121 days after the date of the bill and then turned over to a collection agency, the amount cannot be claimed as a Medicare bad debt on the date of the write-off. It can be claimed as a Medicare bad debt only after the collection agency completes its collection effort.

Intermediary Manual, Part 1B, 13-2. A Health Care Financing Administration policy memorandum dated June 11, 1990, states:

>[U]ntil a provider's reasonable collection effort has been completed, including both in-house efforts and the use of a collection agency, a Medicare bad debt may not be reimbursed as uncollectible. This is in accord with the fourth criteria in section 308 which provides that an uncollected Medicare account cannot be considered an allowable Medicare bad debt unless sound business judgment established that there is no likelihood of recovery at any time in the future. We have always believed that, clearly, there is a likelihood of recovery for an account sent to a collection agency and that claiming a Medicare bad debt at the point of sending the account to a collection agency would be contrary to the bad debt policy in sections 308 and 310 . . . .

(Plaintiffs' Ex. J).

The fiscal intermediary concluded that Plaintiffs did not satisfy parts (3) and (4) of 42 C.F.R. § 413.89(e): that is, that the debts were actually uncollectible when claimed as worthless,

and sound business judgment established that there was no likelihood of recovery at any time in the future. The fiscal intermediary determined that Plaintiffs had included as Bad Debts any debt that was at least 120 days old at the close of the fiscal year, some of which had been referred to a collection agency and not returned to Plaintiffs as uncollectible. Thus, the fiscal intermediary reasoned, the Bad Debts that were still in the hands of a collection agency were not actually uncollectible when claimed as worthless, and further, sound business judgment had not established that there was no likelihood of recovery in the future. According to the fiscal intermediary, a debt could not be claimed as a Bad Debt until collection activities had ceased and the account returned to the provider as uncollectible.

The fiscal intermediary conceded that Plaintiffs had undertaken reasonable efforts to collect the Bad Debts, and that Plaintiffs would have been entitled to claim the Bad Debts on their 1999 cost report if the accounts had not been turned over to a collection agency. The PRRB concluded that the fiscal intermediary's determination that Plaintiffs' claimed Bad Debts were not actually uncollectible when claimed as worthless, and that sound business judgment did not establish that there was no likelihood of recovery in the future was erroneous. The PRRB relied on sections 310.2 and 316 of the PRM, stating that under section 310.2,

> a provider's use of a collection agency may be "in addition to or in lieu of" collection efforts undertaken by the provider itself. Thus, the Board finds that the Intermediary's argument that the Provider's use of an outside collection agency obligated the Provider to engage in its collection efforts for a period greater than the 120 days set forth in CMS Pub 15-1 § 310.2 is not supported by the applicable Medicare regulations or manual instructions.

The PPRB further concluded that under section 316,

> when a provider, in a later period, recovers amounts previously

8

>included in allowable bad debts, the provider's reimbursable costs in the period of recovery are reduced by the amounts so recovered. Thus, it is reasonable to infer that the Medicare program expects that providers will continue to pursue collection activities with respect to debts that have been deemed uncollectible for Medicare reimbursement purposes.

(Plaintiffs' Ex. C, p.34).

Upon review, the Deputy Administrator concluded that the "presumption of uncollectibility" in section 310.2 of the PRM is discretionary rather than mandatory. The presumption does not relieve a provider from satisfying the documentation requirements for establishing Bad Debts, "the presumption only applies where a provider has otherwise demonstrated through appropriate documentation that it engaged in reasonable collection efforts." (A.R. at 10). Where a provider continues to attempt to collect a debt, in-house or through a collection agency, "it is reasonable to conclude that the provider still considers the debt to have value and not worthless." (A.R. at 10). The Deputy Administrator found that in this case there was no documentation establishing when the collection agency actually ceased collection efforts or informed Plaintiffs that the debts were uncollectible as required by section 310 of the PRM. The Deputy Administrator further concluded that the language at section 316 of the PRM regarding subsequent payment of a previously reimbursed Bad Debt did not support an inference that Medicare expects or anticipates that providers will continue to attempt to collect Bad Debts after being reimbursed.

Plaintiffs contend that service providers are entitled to rely upon the presumption of noncollectibility: if a debt is uncollected after 120 days, it may be deemed a Bad Debt. They argue that it is within the discretion of the service provider, rather than the fiscal intermediary or

9

CSM, to deem a debt uncollectible, and after a provider has deemed a debt a Bad Debt, the regulations do not require that the provider cease all collection efforts.

Section 310.2 of the PRM requires that a provider employ "reasonable and customary" collection efforts for at least 120 days, before a debt may be considered a Bad Debt. "Reasonable and customary" encompasses both in-house attempts and the use of a collection agency, singly or in combination. Regardless of the collection method used, the efforts must continue for at least 120 days. At that juncture, but not before, a provider may deem the debt uncollectible. This provision is a guideline provided by the Secretary for implementing the Medicare statute. Accordingly, the provision may not be read or interpreted in a manner that is incompatible with the statutory provision it is intended to interpret. The relevant statute, 42 C.F.R. § 413.89(e), requires that (1) the debt is related to covered services and derived from deductible and coinsurance amounts, (2) the provider must be able to establish that reasonable collection efforts were made (3) the debt is actually uncollectible when claimed as worthless, and (4) sound business judgment established that there was no likelihood of recovery at any time in the future. To permit a provider to deem a debt uncollectible after 120 days for Medicare reimbursement purposes, but to continue its efforts to collect the debt would be inconsistent with the requirements that the debt was actually uncollectible and there was no likelihood of future collection. Such an interpretation would transform the four-requirement statute into a two-requirement statute: (1) The debt must be related to covered services and derived from deductible and coinsurance amounts, and (2) the provider must be able to establish that reasonable collection efforts were made for 120 days. The Court cannot conclude that it was arbitrary or capricious, or inconsistent with Medicare policy for the Secretary to interpret section

310.2 of the PRM in a manner that gave effect to each of the four requirements.

Plaintiffs also argue that the purpose of permitting a debt to be deemed uncollectible after 120 days of collection efforts is to simplify administration. Without the presumption, each year a provider would have to establish the uncollectibility of several thousand debts. However, Battle Creek acknowledged that the collection agency issued monthly reports showing which debts it was actively pursuing and which it was no longer attempting to collect. (A.R. 186). Thus, despite the significant number of debts involved, the burden of establishing that a debt is no longer being pursued would not be so overwhelming as to make the Secretary's decision a clear error in judgment.

Plaintiffs further argue that the discretion to deem a debt uncollectible belongs to the provider, not the fiscal intermediary or the CMS. However, the Secretary's interpretation does not wrest discretion from service providers. After 120 days of reasonable and customary collection efforts, it is within the discretion of the service provider to either continue collection efforts or cease collection efforts and deem the debt uncollectible. The Secretary merely requires that a service provider take one course or the other in order to satisfy the four criteria entitling a provider to reimbursement. Moreover, the Secretary's interpretation does not preclude, nor necessarily discourage, service providers from using collection agencies, as Plaintiffs argue. If a service provider has determined that, in general, turning its receivables over to a collection agency at a given point in the collection process is beneficial, it may still do so.

Section 316 of the PRM provides that if a previously reimbursed bad debt is eventually paid, reimbursable costs in the period of recovery are reduced by the amounts recovered. Section 316 is not incompatible with the Secretary's decision that debts are not reimbursable until

11

collection efforts have ceased. However unlikely it may be that a provider will receive payment on a debt after collection efforts have ceased, it is not unreasonable for the Secretary to include guidelines to govern that situation.

## Conclusion

For the reasons discussed above, the Court denies the Plaintiffs' Motion for Summary Judgment and grants the Defendant's Counter-Motion for Summary Judgment.

So ordered this 30th day of March, 2006.

 /s/ Wendell A. Miles  
Wendell A. Miles  
Senior U.S. District Judge
